# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| SYLVESTER EVERETT HAHN, | ) |
| Plaintiff, | ) ) ) |
| vs. | )  Case No. 1:08 CV 169 LMB |
| LORENE ARMSTRONG, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on the Amended Complaint of Plaintiff Sylvester Everett Hahn alleging a civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Lorene Armstrong, et al. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c).

Presently pending is Defendants Penrod, Rice, Cannoles, Armstrong, Williams, Melton, Leavitt, Dare, and Wickliffe's Motion to Dismiss Plaintiff's Amended Complaint. (Document Number 25). Plaintiff has filed a Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. No. 39), and defendants have filed a Reply (Doc. No. 40).

## Background

In his Amended Complaint, plaintiff argues that defendants failed to protect him from attack by other inmates in violation of the Eighth and Fourteenth Amendments, denied him medical care in violation of the Eighth and Fourteenth Amendments, and conspired to violate his right to be free from attacks in violation of the Eighth and Fourteenth Amendments.

Plaintiff's claims arise from an incident that occurred on March 31, 2004, when plaintiff was an inmate at the Southeast Correctional Center ("SECC"). Plaintiff first alleges that Defendants Armstrong, Doe I, Doe II, Penrod, Hillis, Troutt, Rice, Parks, Cannoles, Leavitt, Williams, Eaglebear, Melton, Barnes, Bollinger, Dalton, Dare, Northern, and Wickliffe allowed inmates Walter Mountain and Carl Belcher, who were residents of B-wing, to enter A-wing to attack plaintiff and his cell mate, Jeff Gray, by opening A-wing. Plaintiff states that, after entering A-wing, defendants allowed Mountain and Belcher to enter plaintiff's locked cell by opening the cell. Plaintiff claims that, during a period of approximately one hour, Mountain and Belcher repeatedly stabbed plaintiff in the back and arm, hog-tied him with his shoe laces, struck him in the head with a footlocker, and beat him in his cell. Plaintiff states that defendants took no action whatsoever to prevent or stop Mountain and Belcher from attacking plaintiff and his cell mate. Plaintiff claims that, as a direct and proximate result of defendants' deliberate indifference to plaintiff's right to be free from attacks by other inmates, plaintiff sustained multiple injuries to his back, lungs, arm, eye, and foot, as well as emotional and psychological trauma.

Plaintiff next alleges that, following the March 31, 2004 attack, defendants Armstrong, Doe I, Doe II, Cannoles, Penrod, Hillis, Troutt, Rice, Parks, Leavitt, Williams, Eaglebear, Melton, Barnes, Bollinger, Dalton, Dare, Northern, and Wickliffe did nothing to assist plaintiff or treat his wounds, allowing him to remain "hog-tied" in his cell for approximately an hour until medical department personnel arrived. Plaintiff states that, as a result of the attack, plaintiff clearly had a serious medical need- stab wounds and bleeding that were visible to these defendants. Plaintiff claims that, in failing to timely contact and provide medical care for plaintiff's multiple injures, defendants acted with deliberate indifference to plaintiff's serious

medical needs.

Plaintiff states that, following the attack, plaintiff was examined by Defendants Sutton, Doe III, and Doe IV, all of whom were acting within the course and scope of their employment or agency relationship with CMS. Plaintiff alleges that these defendants failed to timely examine and treat plaintiff's injuries and allowed him to remain "hog-tied" for approximately one hour after he arrived in medical. Plaintiff claims that these defendants acted with deliberate indifference to plaintiff's serious medical needs.

Plaintiff finally alleges that Defendants Armstrong, Doe I, Doe II, Penrod, Hillis, Troutt, Rice, Parks, Cannoles, Leavitt, Dwyer, Williams, Eaglebear, Melton, Barnes, Bollinger, Dalton, Date, Northern, and Wickliffe had a mutual understanding with inmates Mountain and Belcher to allow them to enter A-wing and plaintiff's cell for the purpose of attacking plaintiff. Plaintiff contends that, in furtherance of this conspiracy, these defendants allowed Mountain and Belcher to enter A-wing and plaintiff's cell and took no action the entire time that they were assaulting plaintiff in his cell. Plaintiff alleges that, as a direct and proximate result of the conspiracy and defendants' deliberate indifference to plaintiff's right to be free from attacks by other inmates, plaintiff sustained multiple injuries to his back, lungs, arm, eye, and foot, as well as emotional and psychological trauma.

## **Discussion**

Defendants argue that plaintiff's Amended Complaint should be dismissed because plaintiff has failed to exhaust his administrative remedies. Specifically, defendants argue that plaintiff did not file an Informal Resolution Request (IRR) at SECC within fifteen days of the date of the incident. Defendants further argue that plaintiff failed to file an Offender Grievance within seven

days of being transferred to South Central Correctional Center ("SCCC"). Defendants state that plaintiff did not file an Offender Grievance until November 20, 2008, more than four years after the alleged incident and outside of the time limits established by the Department of Corrections. Defendants also argue that plaintiff has not filed an Offender Grievance Appeal. Finally, defendants contend that plaintiff did not include the allegations contained in his Amended Complaint in the Offender Grievance he filed on November 20, 2008.

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] by a prisoner confined in any...correctional facility until such administrative remedies as are available are exhausted." All "available" remedies must be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002). Even when a prisoner seeks relief not available in grievance proceedings, exhaustion is a prerequisite to suit. Id. Failure to exhaust administrative remedies "requires immediate dismissal of all claims brought by inmates with respect to prison conditions," Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005), if the affirmative defense has been pled and proved by the defendant, Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001). A failure to exhaust administrative remedies may be excused, however, if "officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedure." Gibson, 431 F.3d at 341.

For a Missouri prisoner to exhaust all available administrative remedies, the prisoner must file an Informal Resolution Request (IRR), an Inmate Grievance, and an Inmate Grievance Appeal. See Foulk, 262 F.3d at 694; Smith v. Stubblefield, 30 F. Supp.2d 1168, 1174 (E.D. Mo.

1998). In order to initiate the grievance process, the inmate must first file an IRR within fifteen days of the alleged incident. (Missouri Department of Corrections Department Manual, Def's Ex. A, at 10). If an inmate is transferred from one institution to another, and has a complaint about the institution from which the inmate has transferred, the inmate "may bypass the informal resolution request process and proceed by filing a grievance within 15 calendar days of the transfer date." (Id. at 16). If the inmate is not satisfied with the response to an IRR, and wishes to further pursue his grievance, an inmate must file an offender grievance within seven working days of receiving a response to his IRR. (Id. at 17). If an inmate is dissatisfied with the grievance response, he may file a grievance appeal within seven calendar days of the response. (Id. at 19-20). Failure to do so will result in the appeal being considered abandoned. (Id. at 20). The grievance process is considered fully exhausted after the inmate files an Inmate Grievance Appeal and receives a response. (Id. at 21-22).

In this case, plaintiff did not file an IRR at SECC within fifteen days of the date of the incident. Rather, plaintiff filed an Offender Grievance on November 20, 2008. Plaintiff claims that his incapacitation as the result of the injuries he suffered on March 31, 2004 and SECC personnel's failure to assist him in pursuing an administrative grievance made the filing of an IRR within fifteen days of the incident unavailable. Plaintiff contends that he suffered multiple stab wounds resulting in a collapsed lung and other injuries to his eye and heel, which required emergency hospitalization. Plaintiff states that he was hospitalized for approximately six days at St. Francis Medical Center in Cape Girardeau, Missouri, before being returned to SECC. Plaintiff claims that, upon his return to SECC, he was placed in a solitary confinement cell in the prison's infirmary for approximately three weeks followed by placement in solitary confinement in

administrative segregation.  Plaintiff states that he was transferred to SCCC on May 24, 2004.  Plaintiff argues that neither his injuries nor his placement in solitary confinement "were conducive to his efforts to grieve the attack upon him."  (Response at p. 4).

Plaintiff further argues that his attempts to get assistance from correctional officers regarding what he should do about the incident were met with silence.  Plaintiff contends that the correctional officers ignored him and any further attempts to gain access to the grievance procedure would have been futile.  Plaintiff argues that his incapacitation and lack of information prevented him from filing an IRR within the time required.  Plaintiff contends that, because he was prevented from utilizing these remedies, they were not available under 42 U.S.C. § 1997e(a).

Defendants contend that plaintiff's arguments fail to establish that administrative remedies were unavailable because plaintiff does not claim that he was unable to utilize the grievance process during the required time period, nor does he claim that anyone at SECC prevented him from utilizing the grievance process.

Inmates have only been excused from complying with an institution's grievance procedures when officials have prevented poisoners from utilizing the procedures, See Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001), or when officials themselves have failed to comply with the grievance procedures.  See Foulk, 262 F.3d at 698.  An inmate's subjective belief that the procedures were not applicable "does not matter" and is not determinative.  Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir. 2002).  A plaintiff must present some evidence, other than mere conclusory statements to demonstrate that he was precluded from fully exhausting his administrative remedies.  See Gibson, 431 F.3d at 341.

In this case, plaintiff has failed to show that administrative remedies were unavailable.

With regard to plaintiff's incapacitation as a result of his injuries, plaintiff admits that he was returned to SECC within six days of the alleged assault. As such, plaintiff had sufficient time within which to file an IRR. Although plaintiff claims that he was placed in solitary confinement upon his return to SECC after his hospitalization, plaintiff has presented no evidence that administrative remedies were unavailable to him in solitary confinement.

Plaintiff's claim that administrative remedies were unavailable because prison guards ignored him also fail. Plaintiff has presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for him to file grievances. Rather, plaintiff simply alleges that his attempts to "get assistance from correctional officers regarding what he should do about the incident were me with silence," and that any "further attempts to gain access to the grievance procedure would have been futile." (Response at 4-5). Plaintiff cites Miller, 247 F.3d at 740, in support of his claim that he was prevented from utilizing the prison's administrate remedies because of his incapacitation and lack of assistance from guards.

In Miller, the Eighth Circuit held that the plaintiff inmate was prevented from exhausting his administrative remedies when prison officials failed to respond to his requests for grievance forms. 247 F.3d at 740. Plaintiff does not, however, allege that he requested forms from the guards or otherwise attempted to initiate the grievance process. Plaintiff also does not claim that he was unaware of the grievance process. Plaintiff's vague allegations that unnamed prison guards did not assist him are insufficient. Similarly, plaintiff provides no support for his conclusory allegation that "further attempts to gain access to the grievance procedure would have been futile." Thus, plaintiff's claim that administrative remedies were unavailable due to his

incapacitation and lack of assistance from prison guards lacks merit.

Defendants also argue that plaintiff did not file an Offender Grievance within fifteen days after being transferred to SCCC. Plaintiff claims that he did not file his grievance until November 20, 2008 due to inaccurate advice he received from his attorneys. Specifically, plaintiff contends that he hired J. Michael Payne to assist him with obtaining a hardship release. Plaintiff claims that, when he asked Mr. Payne what he should do regarding the March 31, 2004 assault, Mr. Payne advised him to "sit tight," as he did not want him to jeopardize his pending release or make it difficult for him. Plaintiff also argues that he received advice regarding the filing of a civil lawsuit from the Toohey Law Firm and that the Toohey Law Firm erroneously advised him that his case was time-barred by a one-year statute of limitations. Plaintiff contends that it was not until he was incarcerated at the Moberly Correctional Center in 2008 that he received the assistance of jail house lawyers who helped him in preparing grievances. Plaintiff, citing Miller, 247 F.3d at 740, argues that the erroneous advice received from his attorneys rendered the administrative grievance procedure unavailable.

The undersigned finds that plaintiff's claims lack merit. Miller held that administrative remedies are unavailable when prison officials prevent an inmate from pursuing the grievance procedure. Plaintiff does not argue that any prison official prevented him from pursuing the grievance process. Plaintiff's position that a private attorney's erroneous legal advice can render administrative remedies unavailable is not supported by Miller, or any other authority.

Defendants further argue that plaintiff's Amended Complaint should be dismissed because plaintiff still has not filed a grievance appeal, and because plaintiff did not include the allegations contained in his Amended Complaint in the Offender Grievance he filed on November 20, 2008.

The undersigned has found that plaintiff has not exhausted his administrative remedies in failing to file an IRR within fifteen days of the alleged incident or an offender grievance within fifteen days of being transferred to SCCC, despite the availability of these remedies. As such, the undersigned will not discuss defendants' additional arguments in support of their motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Penrod, Rice, Cannoles, Armstrong, Williams, Melton, Leavitt, Dare, and Wickliffe's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 25) be and it is **granted**.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that plaintiff's Amended Complaint be and it is **dismissed without prejudice**.

Dated this   11th  day of February, 2010.

*Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE